FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

2014 NOV 14 P 3:08

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

XO COMMUNICATIONS SERVICES, LLC, )
TELECOMMUNICATIONS OF NEVADA, LLC, )
AND XO VIRGINIA, LLC )
 )
                Plaintiffs )
 )
v. )  Case No. 1:14cv1521
 )  LMB/TRJ
AT&T CORP. )
 )
                Defendant )
 )

## COMPLAINT

Plaintiffs XO Communications Services, LLC, Telecommunications of Nevada, LLC, and XO Virginia, LLC (collectively "Plaintiffs" or "XO"), by and through their attorneys, allege the following for their Complaint against AT&T Corp. ("Defendant" or "AT&T").

*Introduction*

1.    This is an action by XO against Defendant for damages arising from Defendant's failure to pay XO for timely-invoiced services that XO provided to Defendant pursuant to lawful federal tariffs, state tariffs and state-mandated schedules of rates, terms, and conditions (collectively, the "Tariff" or "Tariffs"). Defendant purchased these services from XO so that Defendant could connect calls placed by its customers to the telephone numbers dialed by those customers and served by XO. This is a simple collection action as Defendant's obligation to pay -- and XO's obligation to collect -- the amounts at issue here are mandated by the Tariffs.

*Parties*

2.    XO Communications Services, LLC, a Delaware limited liability company, and XO Virginia, LLC, a Washington limited liability company, are both wholly owned subsidiaries

of XO Communications, LLC, a Delaware limited liability company. Telecommunications of Nevada, LLC, a Delaware limited liability company, is a subsidiary of XO Communications, LLC and XO Nevada Merger Sub, Inc., a Delaware corporation that is a wholly owned subsidiary of XO Communications, LLC. The principal place of business for XO Communications, LLC, XO Communications Services, LLC, XO Virginia, LLC and Telecommunications of Nevada, LLC, is located at 13865 Sunrise Valley Drive, Herndon, Virginia 20171. Plaintiffs provide a variety of communications services to customers, including common carriers like Defendant, in Arizona, California, Colorado, Delaware, the District of Columbia, Florida, Georgia, Idaho, Illinois, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Utah, Virginia, and Washington.

3. Defendant is a New York corporation. Its principal place of business is located at 1 AT&T Way, Bedminster, New Jersey 07921. Defendant is a common carrier that purchases telecommunications services from other common carriers, including Plaintiffs, so that Defendant can provide telecommunications services, including long distance services, to its customers.

*Jurisdiction and Venue*

4. Both diversity and federal question jurisdiction exist in this case. The Court has subject matter jurisdiction over this action, in its entirety, pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Additionally, pursuant to 28 U.S.C. §§ 1331 and 1337, the Court has subject matter jurisdiction over XO's federal law claims arising under its schedule of charges for interstate communications filed in its federal access tariff under Section 203 of the Communications Act of 1934, as amended, 47 U.S.C. § 203. The Court also has jurisdiction over XO's state law claims pursuant to 28 U.S.C. § 1367 because they share a common nucleus of

operative facts with XO's federal law claims and would ordinarily be expected to be tried in a single judicial proceeding.

5. The Court has personal jurisdiction over Defendant pursuant to VA. Ann. § 8.01-328.1 because Defendant provides telecommunications services throughout Virginia with the authorization of the Federal Communications Commission ("FCC") and the Virginia Corporation Commission and regularly transacts business in the state.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant transacts business in this judicial district and is subject to the Court's personal jurisdiction.

***Factual Background***

7. In order to provide long distance services, long distance carriers, including the Defendant, typically establish one or more points of presence ("POPs") that each provide a point of interconnection between a long distance network and a local network. When a party makes a long distance call, the calling party's pre-selected local service provider (the "Local Exchange Carrier" or "LEC") typically transports the call over its local network to the POP of the calling party's pre-selected long distance carrier. At this POP, the calling party's LEC hands the call off, directly or through an intermediary, to the calling party's long distance carrier. The calling party's long distance carrier then transports the call from the POP where it received the long distance call to its POP serving the geographic area associated with the telephone number dialed by the calling party. At this second POP, the calling party's long distance carrier hands the call off, directly or through an intermediary, to the LEC serving the telephone number dialed by the calling party.

8. The United States uses a "calling party pays" system for telecommunications services pursuant to which the calling party pays the entire cost of the call unless the called party

has established a toll free telephone number to receive calls for which the called party pays the full costs. Under the calling party pays system, each long distance carrier, including the Defendant, collects fees from its customers for long distance services, which the long distance carrier can provide only by arranging with each LEC, including XO, to connect long distance calls to telephone numbers served by the LEC and dialed by the long distance carrier's customer. In order to "originate" a long distance call from one of its customers and "terminate" the call to the dialed telephone number, long distance carriers, including the Defendant, must pay both (a) the LEC that serves the long distance carrier's customer who made the call; and (b) the LEC that serves the dialed telephone number.

9.  The transmission by a LEC of a long distance call over its local network from the long distance carrier's customer who made the call to the long distance carrier's POP is known as "originating access." The transmission by a LEC of a long distance call over its local network from a long distance carrier's POP serving the geographic area associated with the dialed telephone number to that number is known as "terminating access." Originating and terminating access services collectively are known as "access services."

10. Long distance carriers, including the Defendant, can arrange to receive either "dedicated access services," which provide dedicated connections, or "switched access services," which provide access on a per call basis, from LECs, including XO. The services at issue here are switched access services received by Defendant from XO.

11. Switched access service charges are the fees that the FCC and state regulatory authorities require long distance carriers, including the Defendant, to pay LECs, including XO, for the use of the LEC's local network on a per-call basis to originate or terminate long distance calls on behalf of the long distance carrier. In the absence of an individually negotiated

4

arrangement between the LEC and the long distance carrier (an "Individual Case Basis" or "ICB" arrangement), the charges associated with switched access services are governed by federal tariffs, state tariffs, or, in states that have implemented mandatory detariffing, state-mandated schedules of rates, terms, and conditions. If the call originates and terminates within the same state, the applicable switched access charges are set forth in intrastate tariffs filed with that state's regulatory authority or intrastate schedules posted in accordance with that state's regulations. If the call originates in one state and terminates in another, the applicable switched access charges are set forth in interstate tariffs filed with the FCC. In order to prevent discrimination, applicable federal and state law requires long distance carriers to pay, and LECs to collect, the rates set forth in applicable tariffs, schedules and ICBs for switched access services.

12. Defendant provides long distance services to millions of Americans.

13. Defendant uses switched access services provided by XO to connect calls made by Defendant's customers to dialed telephone numbers that XO serves ("Switched Access Services").

14. Defendant and XO have not entered into any applicable ICB arrangements for the Switched Access Services at issue here.

15. The rates, terms, and conditions for Switched Access Services provided by XO and used by Defendant are set forth in XO's Tariffs.

16. Apart from the rates, the material terms of each of the applicable Tariffs are essentially the same.

17. The Tariffs define "Switched Access Service" as:

> [Service] which is available to Carrier Customers for their use in furnishing their services to End Users or other Customers,

5

> including carriers; provides a two-point communications path between a Customer's Premises and an End User or other Customer, including a carrier's Premises. It provides for the use of common terminating, switching and transport facilities. Switched Access Service provides the ability to originate calls from an End User's Premises location to a Customer's Premises; and to terminate calls from a Customer's designated Premises to an End User's Premises.

XO Interstate Access Tariff § 5.1.

18. The Tariffs define "Customer" as:

> The person, firm, corporation, government entity, or other entity, which subscribes to or uses, and is therefore responsible for the payment of charges and compliance with the Company's regulations, the services offered under this tariff, including but not limited to, Interexchange Carriers (IXCs) . . . .

XO Interstate Access Tariff § 1.

19. The Tariffs define "End User" as:

> Any customer of an interstate or foreign communications service that is not a common carrier; provided that . . . a person or entity that offers communications service exclusively as a reseller shall be deemed to be an "end user" if all resale transmissions offered by such reseller originate on the premises of such reseller.

XO Interstate Access Tariff § 1.

20. The Tariffs define "Premises" as:

> Denot[ing] a building or buildings on contiguous property (except railroad right-of-way, etc.) not separated by a public highway.

XO Interstate Access Tariff § 1.

21. The Tariffs contain a Dispute Resolution Clause that requires the payment of all disputed amounts within 15 days of receiving a notice of resolution denying the dispute from XO. Specifically, the Tariffs provide in relevant part as follows:

> In the event Customer disputes any billing or rates, Customer shall notify Company in writing, providing the billing identification, trouble ticket number and an explanation for the dispute, and shall

6

> nevertheless pay all undisputed charges within the thirty (30) day period specified above. . . . The date of the dispute shall be the date on which the Customer furnishes the Company the account information required above. Company will investigate the dispute and attempt to resolve the billing or rate issues within forty five (45) days. . . .
>
> The Date of Resolution is the date the Company completes its investigation, provides written notice to the Customer regarding the disposition of the claim, i.e., resolved in favor of the Customer or resolved in favor of the Company, and credits the Customer's account, if applicable.
>
> Upon resolution of dispute, Customer must make payment to Company within 15 days from the Date of Resolution.
>
> XO Interstate Access Tariff § 2.5.2 G. - H.

22. XO knows that Defendant received all of the Switched Access Services for which XO invoiced Defendant because all of the long distance calls that XO connected on Defendant's behalf to telephone numbers that XO serves contain the carrier identification code ("CIC") of "0288," which identifies Defendant as the long distance carrier responsible for the call. Defendant has never disputed that Defendant is the long distance carrier responsible for the long distance calls for which XO invoiced Defendant charges for Switched Access Services.

23. By operation of law, Defendant is obligated to pay XO, and XO is obligated to collect from Defendant, the charges for Switched Access Services that Defendant received from XO that are set forth in the applicable Tariff. For interstate Switched Access Services, the amount that Defendant is obligated to pay, and that XO is obligated to collect, is established by the tariff that XO lawfully filed with the FCC, which remains in full force and effect. For intrastate Switched Access Services, the amount that Defendant is obligated to pay, and that XO is obligated to collect, is established by the tariff that XO lawfully filed with the state regulatory authority in each of the relevant states, each of which remains in full force and effect, or, in states that have implemented mandatory detariffing, the schedules of rates, terms, and conditions

7

that XO has published in accordance with the requirements of the relevant state regulatory authorities.

24. Since August 2013, Defendant has failed to pay the full amounts that, by operation of law, Defendant is obligated to pay XO, and XO is obligated to collect from Defendant, for the Switched Access Services that XO provided to Defendant pursuant to the Tariffs. Instead, Defendant arbitrarily disputed charges associated with fifty percent (50%) of the long distance calls and paid only a portion of the amounts owed for Switched Access Services provided by XO to connect those long distance calls. With each dispute notice for every invoice containing charges for interstate and intrastate Switched Access Services, Defendant included the following statement: "Disputing payment of End Office Elements relative to OTT VoIP traffic. Traffic should only be paid at tandem." XO understands Defendant's use of the term "OTT VoIP" to mean "over the top ("OTT") Voice over Internet Protocol ("VoIP")."

25. With respect to the amounts owed for services performed, XO provided Defendants with Switched Access Services as described in the Tariffs, including all rate elements specified in the description of Switched Access Services.

26. No material amount of the long distance calls at issue here involved OTT VoIP providers or could be considered OTT VoIP traffic. To the extent any of the long distance calls at issue here involved OTT VoIP providers, XO nonetheless provided Defendants with Switched Access Services for such calls exactly as described in the Tariffs, including all rate elements specified in the description of Switched Access Services, and invoiced charges for such Switched Access Services in full compliance with the rates, terms, and conditions for Switched Access Services set forth in the Tariffs.

27. In accordance with the tariffed Dispute Resolution Clause, XO provided Defendant with notice of resolution of the dispute on August 30, 2013 (the "Notice") after investigating and confirming that Defendant's claim had no merit. With the Notice, XO reminded Defendant of its legal obligation to pay the amounts invoiced pursuant to the Tariffs. To date, Defendant has refused to pay the withheld amounts due.

28. Since August 2013, Defendant has breached its obligations under the Tariffs by failing to pay $2,913,263.78 due to XO for Switched Access Services that XO provided to Defendant between July 2013 and October 2014.

29. Defendant also has breached its obligations under the Tariffs by failing to pay $251,175.89 due to XO for late fees and charges as required by those Tariffs. Service charges and late fees continue to accrue in accordance with the terms of the applicable Tariffs.

### *Count One*
### *Breach of Federal Tariff Obligations for Interstate Calls*

30. XO realleges and incorporates herein paragraphs 1-29 of this Complaint as if fully set forth herein.

31. XO provides interstate services pursuant to an FCC tariff, Tariff FCC No. 1, ("FCC Tariff") issued by XO Communications, LLC, which became effective on July 1, 2007.

32. Plaintiffs are identified as concurring carriers in the FCC Tariff, which by its terms renders the rights and obligations created by the FCC Tariff applicable to Plaintiffs.

33. XO's FCC Tariff sets forth the services offered and the rates, terms, and conditions applicable to XO's provision of Switched Access Services.

34. Pursuant to § 2.1.2.B of the FCC Tariff, customers who utilize the services offered under its terms without executing a written Service Order are deemed to have ordered the

services and are obligated to pay for such services. Pursuant to § 2.3.1(a) of the FCC Tariff, this obligation includes the responsibility to pay all applicable charges as defined in the FCC Tariff.

35.   Pursuant to § 2.5.2 of the FCC Tariff, all payments are due within thirty days of the invoice date. Any amount due and unpaid within this timeframe is subject to a late payment penalty of 1.5% per month.

36.   Pursuant to the Dispute Resolution Clauses in §§ 2.5.2 G and 2.5.2 H of the FCC Tariff, Defendant was required to pay all amounts invoiced by XO once XO made a determination denying Defendant's dispute.

37.   Beginning with the August 2013 invoices, Defendant breached the FCC Tariff by refusing to comply with its payment provisions. Defendant instead began arbitrarily disputing Switched Access Services charges associated with fifty percent (50%) of the calls and paid only a portion of the amounts otherwise owed for Switched Access Services related to those calls.

38.   XO has fully performed all of its obligations under the FCC Tariff, is not in breach of it, and is entitled to full payment. XO demanded payment from Defendant, but Defendant has refused to pay.

39.   As of October 2014, Defendant has failed to pay $2,059,203.93 for services provided to it by XO under XO's FCC Tariff between July 2013 and October 2014. Additionally, Defendant has failed to pay $244,988.58 in late fees mandated by § 2.5.2 of the FCC Tariff. Service charges and late fees continue to accrue in accordance with the terms of the FCC Tariff.

40.   XO is entitled to recover the legal fees incurred in maintaining this lawsuit pursuant to § 2.1.2.D of the FCC Tariff which provides that "in the event the Company incurs fees or expenses, including without limitation attorneys' fees, in collecting, or attempting to

collect, any charges owed the Company, the Customer will be liable to the Company for the payment of all such fees and expenses reasonably incurred."

41. The above amounts are due and owing from Defendant. As of the date of this Complaint, Defendant has failed to tender payment of the withheld amounts owed. As a result of Defendant's breach, XO has been damaged.

## *Count Two*
## *Breach of Intrastate Tariff Obligations for Intrastate Calls*

42. XO realleges and incorporates herein paragraphs 1 - 41 of this Complaint as if fully set forth herein.

43. XO provides intrastate Switched Access Services in the states listed below pursuant to the terms of the effective intrastate tariffs it has filed with the applicable state regulatory authorities or, in states that have implemented mandatory detariffing, state-mandated published schedules of rates, terms, and conditions.

44. The rates, terms, and conditions for XO's intrastate Switched Access Services are set forth in its filed intrastate access tariffs or published schedules.

45. Under each tariff and schedule, customers who utilize the services offered pursuant to the terms of the tariff or schedule without executing a written Service Order are deemed to have ordered the services and are obligated to pay for such services.

46. Pursuant to each tariff and schedule, Defendant's obligations include the responsibility to pay all applicable charges, as defined in the tariff or schedule.

47. XO has fully performed all of its obligations under the state tariffs and schedules, is not in breach of any of the state tariffs or schedules, and is entitled to payment pursuant to the state tariffs and schedules for the amounts that Defendant has withheld. XO has demanded payment from Defendant, but Defendant has refused to pay.

48.     Defendant has breached the tariffs and schedules listed below by failing to pay the withheld amounts due for the services used.

49.     For the reasons set forth in this complaint, and pursuant to XO's effective state tariffs and schedules, Defendant is liable to XO for its failure to pay withheld amounts due for services provided to it by XO pursuant to the applicable state tariffs and schedules. Additionally, Defendant is liable for its failure to pay late fees mandated by the state tariffs and schedules. Both service charges and late fees continue to accrue in accordance with the terms of the state tariffs and schedules.

50.     As of October 2014, Defendant has failed to pay $854,059.85 for services provided to it by XO under the state tariffs and schedules between July 2013 and October 2014. Additionally, Defendant has failed to pay $6,187.31 in late fees mandated by the state tariffs and schedules. Service charges and late fees continue to accrue in accordance with the terms of the state tariffs and schedules.

51.     XO is entitled to recover the legal fees incurred in maintaining this lawsuit pursuant to the state tariffs and schedules which provide, similar to the Federal Tariff, that "in the event the Company incurs fees or expenses, including without limitation attorneys' fees, in collecting, or attempting to collect, any charges owed the Company, the Customer will be liable to the Company for the payment of all such fees and expenses reasonably incurred."

52.     The amounts that Defendant has withheld in violation of the state tariffs and schedules are due and owing from Defendant. As of the date of this Complaint, Defendant has failed to tender payment of the withheld amounts owed. As a result of Defendant's breach, XO has been damaged.

### a. Arizona

53. XO's charges for intrastate Switched Access Services in the State of Arizona are set forth in XO Communications Services, LLC Arizona Tariff No. 5 and XO Communications Services, LLC Arizona Tariff No. 7, which applies only to existing customers of the former Allegiance Telecom of Arizona, Inc. ("Allegiance Arizona"). XO Communications, Inc., the predecessor-in-interest to XO Communications, LLC, acquired Allegiance Arizona and merged its operations into those of the predecessor-in-interest to XO Communications Services, LLC.

### b. California

54. XO's charges for intrastate Switched Access Services in the State of California are set forth in XO Communications Services, LLC Cal. P.U.C. Schedule CLC 3-T and XO Communications Services, LLC Schedule Cal. P.U.C. No. 2-T.

### c. Colorado

55. XO's charges for intrastate Switched Access Services in the State of Colorado are set forth in XO Communications Services, LLC CO P.U.C. Tariff No. 7.

### d. Delaware

56. XO's charges for intrastate Switched Access Services in the State of Delaware are set forth in XO Communications Services, LLC Delaware PSC Tariff No. 1.

### e. Florida

57. XO's charges for intrastate Switched Access Services in the State of Florida are set forth in XO Communications Services, LLC Florida Price List No. 7 and XO Communications Services, LLC Florida Price List No. 8, which applies only to existing customers of the former Allegiance Telecom of Florida, Inc. ("Allegiance Florida"). XO Communications, Inc., the predecessor-in-interest to XO Communications, LLC, acquired

Allegiance Florida and merged its operations into those of the predecessor-in-interest to XO Communications Services, LLC.

**f.    Georgia**

58.   XO's charges for intrastate Switched Access Services in the State of Georgia are set forth in XO Communications Services, LLC Georgia PSC No. 4.

**g.    Idaho**

59.   XO's charges for intrastate Switched Access Services in the State of Idaho are set forth in XO Communications Services, LLC Idaho Price List No. 2.

**h.    Illinois**

60.   XO's charges for intrastate Switched Access Services in the State of Illinois are set forth in XO Communications Services, LLC Illinois No. 2.

**i.    Maryland**

61.   XO's charges for intrastate Switched Access Services in the State of Maryland are set forth in XO Communications Services, LLC P.S.C. MD Tariff No. 3.

**j.    Massachusetts**

62.   XO's charges for intrastate Switched Access Services in the State of Massachusetts are set forth in XO Communications Services, Inc.[1] M.D.T.E. Tariff No. 3.

**k.    Michigan**

63.   XO's charges for intrastate Switched Access Services in the State of Michigan are set forth in XO Communications Services, LLC Michigan Tariff No. 1 and XO Communications Services, LLC Michigan Tariff No. 2, which applies only to existing customers of the former Allegiance Telecom of Michigan, Inc. ("Allegiance Michigan"). XO Communications, Inc., the

---

[1]   In Massachusetts, XO is operating as XO Communications Services, Inc.

14

predecessor-in-interest to XO Communications, LLC, acquired Allegiance Michigan and merged its operations into those of the predecessor-in-interest to XO Communications Services, LLC.

**l.   Minnesota**

64.   XO's charges for intrastate Switched Access Services in the State of Minnesota are set forth in XO Communications Services, LLC Minnesota Tariff No. 3.

**m.   Mississippi**

65.   XO's charges for intrastate Switched Access Services in the State of Mississippi are set forth in XO Communications Services, LLC Mississippi P.S.C. No. 2.

**n.   Missouri**

66.   XO's charges for intrastate Switched Access Services in the State of Missouri are set forth in XO Communications Services, LLC Missouri Tariff No. 9 and XO Communications Services, LLC Missouri Tariff No. 10, which applies only to existing customers of the former Allegiance Telecom of Missouri, Inc. ("Allegiance Missouri"). XO Communications, Inc., the predecessor-in-interest to XO Communications, LLC, acquired Allegiance Missouri and merged its operations into those of predecessor-in-interest to XO Communications Services, LLC.

**o.   Nevada**

67.   XO's charges for intrastate Switched Access Services in the State of Nevada are set forth in XO Telecommunications of Nevada, LLC Intrastate Access Services Product Document, as published on www.xo.com.

**p.   New Jersey**

68.   XO's charges for intrastate Switched Access Services in the State of New Jersey are set forth in XO Communications Services, LLC New Jersey Tariff No. 3 and XO Communications Services, LLC New Jersey Tariff No. 5, which applies only to existing customers of the former Allegiance Telecom of New Jersey, Inc. ("Allegiance New Jersey"). XO

Communications, Inc., the predecessor-in-interest to XO Communications, LLC, acquired Allegiance New Jersey and merged its operations into those of the predecessor-in interest to XO Communications Services, LLC.

    **q.**    **New York**

69. XO's charges for intrastate Switched Access Services in the State of New York are set forth in XO Communications Services, LLC New York PSC Tariff No. 2 -- Telephone.

    **r.**    **North Carolina**

70. XO's charges for intrastate Switched Access Services in the State of North Carolina are set forth in XO Communications Services, LLC Intrastate Access Services Product Document, as published on www.xo.com.

    **s.**    **Ohio**

71. XO's charges for intrastate Switched Access Services in the State of Ohio are set forth in XO Communications Services, Inc.[2] P.U.C.O. No. 3 and P.U.C.O. No. 4, which applies only to existing customers of the former Allegiance Telecom of Ohio, Inc. ("Allegiance Ohio"). XO Communications, Inc., the predecessor-in-interest to XO Communications, LLC, acquired Allegiance Ohio and merged its operations into those of the predecessor-in-interest to XO Communications Services, LLC.

    **t.**    **Oregon**

72. XO's charges for intrastate Switched Access Services in the State of Oregon are set forth in XO Communications Services, LLC Intrastate Access Services Product Document, as published on www.xo.com.

---

[2] In Ohio, XO is operating as XO Communications Services, Inc.

### u. Pennsylvania

73. XO's charges for intrastate Switched Access Services in the State of Pennsylvania are set forth in XO Communications Services, Inc.[3] Tariff Telephone - Pa. P.U.C. No. 11 and XO Communications Services, Inc. Tariff Telephone - Pa. P.U.C. No. 13, which applies only to existing customers of the former Allegiance Telecom of Pennsylvania, Inc. ("Allegiance Pennsylvania"). XO Communications, Inc., the predecessor-in-interest to XO Communications, LLC, acquired Allegiance Pennsylvania and merged its operations into those of the predecessor-in-interest to XO Communications Services, LLC.

### v. Tennessee

74. XO's charges for intrastate Switched Access Services in the State of Tennessee are set forth in XO Communications Services, LLC Tennessee Tariff No. 2.

### w. Texas

75. XO's charges for intrastate Switched Access Services in the State of Texas are set forth in XO Communications Services, Inc.[4] Texas Tariff No. 7 and XO Communications Services, Inc. Texas Rate Sheet No. 8, which applies only to existing customers of the former Allegiance Telecom of Texas, Inc. ("Allegiance Texas"). XO Communications, Inc., the predecessor-in-interest to XO Communications, LLC, acquired Allegiance Texas and merged its operations into those of the predecessor-in-interest to XO Communications Services, LLC.

### x. Utah

76. XO's charges for intrastate Switched Access Services in the State of Utah are set forth in XO Communications Services, LLC Utah Price List No. 2.

---

[3] In Pennsylvania, XO is operating as XO Communications Services, Inc.
[4] In Texas, XO is operating as XO Communications Services, Inc.

**y.    Virginia**

77.    XO's charges for intrastate Switched Access Services in the State of Virginia are set forth in XO Virginia, LLC S.C.C. Tariff No. 3 and XO Virginia, LLC VA Tariff SCC No. 3A, which applies only to existing customers of the former Allegiance Telecom of Virginia, Inc. ("Allegiance Virginia"). XO Communications, Inc., the predecessor-in-interest to XO Communications, LLC, acquired Allegiance Virginia and merged its operations into those of XO Virginia, LLC.

**z.    Washington**

78.    XO's charges for intrastate Switched Access Services in the State of Washington are set forth in XO Communications Services, LLC Intrastate Access Services Product Document, as published on www.xo.com.

*Count Three*
*Unjust Enrichment/Quantum Meruit*

79.    XO realleges and incorporates herein paragraphs 1 - 78 of this Complaint as if fully set forth herein.

80.    By providing Switched Access Services to Defendant for use in originating and terminating long distance calls for which Defendant received substantial revenues, XO has provided valuable services to Defendant, and Defendant had reasonable notice that XO expected full compensation for such services. Defendant has unjustly retained that benefit by evading the full payment of charges that Defendant is required by law to pay to XO, and XO is required by law to collect, for the services that Defendant received from XO. Defendant's continued retention of that benefit would violate the principles of justice, equity, and good conscience.

81. XO is entitled to restitution from Defendant, computed as the amount of tariffed and scheduled Switched Access Services charges that Defendant has evaded, with interest and late payment fees.

82. Absent injunctive relief, XO will be irreparably harmed. If Defendant were allowed to continue to avoid fully paying the tariffed and scheduled Switched Access Service charges, XO would be forced to initiate a multitude of legal proceedings against Defendant to recover the amount of unjust enrichment Defendant has unlawfully obtained.

## *PRAYER FOR RELIEF*

Wherefore, Plaintiff XO respectfully requests that the Court enter judgment against Defendant and award XO:

(i) money damages due to XO for the service charges at the time judgment is rendered, plus all late fees calculated in accordance with the applicable federal tariff and state tariffs and schedules;

(ii) injunctive relief by permanently enjoining Defendant from violating the Dispute Resolution Clauses of the Tariffs by withholding payments for all or a portion of invoiced charges for Switched Access Services after XO has provided a notice of dispute resolution to Defendant pursuant to the Tariffs;

(iii) interest, costs, and attorneys' fees; and

(iv) any such further legal and equitable relief as this Court deems just and appropriate.

Dated: November 14, 2014

Respectfully submitted,

_____
Drew W. Marrocco (VSB # 38955)
drew.marrocco@dentons.com
Daniel Morris
daniel.morris@dentons.com
Todd D. Daubert
todd.daubert@dentons.com
Dentons US LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, DC 20005
(202) 408-6400
Fax: (202) 408-6399

*Counsel for* XO Communications Services, LLC, Telecommunications of Nevada, LLC, and XO Virginia, LLC